# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-1749

| | |
|---|---|
| ELIZABETH JACKMAN,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: October 10, 2024 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Eleanor Hanson, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT[1]

On October 5, 2023, Elizabeth Jackman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza vaccine she received on September 30, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find that there is preponderant evidence that Petitioner's flu vaccine was likely administered to her right arm.

## I.     Relevant Procedural History

On July 17, 2023, Respondent requested in a status report that I make a fact finding on the question of whether Petitioner received her flu vaccine in her left or right arm. ECF No. 17.

## II.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did

not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare not only the medical records, testimony, but also all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). And although later oral testimony that conflicts with medical records is less reliable as a general matter, it is appropriate for a special master to credit a petitioner's lay testimony where is does not conflict with the contemporaneous records. *Kirby*, 997 F.3d at 1382-84.

## III.   Finding of Fact

I make the following findings after a complete review of the record to include all medical records, declarations, and additional evidence and arguments filed:

- Petitioner received a flu vaccine on September 30, 2022. Ex. 1 at 1. The vaccine administration record indicates that the vaccine was administered to Petitioner's left deltoid. *Id*.

- Petitioner, however, recalled receiving her flu vaccine in her *right* arm. Ex. 11 at ¶1. She recalled being seated during the vaccination with the administrator standing. *Id*. She recalled immediate "internal pain and loss of range of motion in [her] arm" and difficulty driving home from the appointment. *Id*. at ¶1-2. Petitioner recalled that she was "so concerned about the unusually high injection site of the flu vaccine and the unexpected pain level" that she took a photograph of the bandage and the injection site. Ex. 11 at ¶2. Petitioner provided the photograph at Exhibit 8. The photograph depicts Petitioner looking at the camera over her right shoulder,

3

which has a bandaid pulled back on one side to reveal the injection site. Ex. 8 at 1. The metadata included with the photograph indicates that it was taken on October 1, 2022. *Id*.

- Petitioner saw an orthopedist on October 11, 2022 (12 days after vaccination). Ex. 2 at 26. She reported that she had received a flu vaccine "really high up" on her right shoulder, after which she felt "immediate pain" that was fairly severe, and difficulty raising her arm. *Id*. Her symptoms had continued since that time, with night pain that impacted her sleep. *Id*. She was diagnosed with rotator cuff tendinitis and possible bursitis. *Id*. The orthopedist noted that it was "possible that [the] flu vaccine was injected either into the rotator cuff tendon or possibly into the subacromial/subdeltoid bursa." *Id*. She was prescribed diclofenac and referred to physical therapy. *Id*.

- Two days later, on October 13, 2022, Petitioner began physical therapy. Ex. 3 at 27. She reported "right shoulder pain and stiffness which began after she received a flu vaccination." *Id*. at 29. On exam, Petitioner had reduced range of motion in her right shoulder, decreased strength, and mild to moderate tenderness to palpation. *Id*. She continued physical therapy for eight sessions. *Id*. at 6-18.

- Petitioner returned to her orthopedist on November 8, 2022. Ex. 2 at 24. She reported improvement in her symptoms, but continued right shoulder pain, particularly at night while sleeping. *Id*. An examination of Petitioner's right shoulder revealed mild tenderness, positive impingement testing, a positive cross arm test. *Id*. The orthopedist administered a cortisone injection to the right shoulder. *Id*. At a follow-up visit on December 6, 2022, Petitioner reported "complete relief of pain at night for a couple of nights," but then worsening again. *Id*. at 20. Petitioner was encouraged to return to physical therapy. *Id*.

- Petitioner attended seven physical therapy treatments for her right shoulder between December 8, 2022, and January 5, 2023. Ex. 3 at 39-64. During her initial evaluation, Petitioner reported right shoulder pain after receiving a flu vaccine in September. *Id*. at 63. At discharge, Petitioner had "reached maximum benefit from therapy" and reported "performing at [her] prior level of function." *Id*. at 39.

- During a follow-up with her orthopedist on January 3, 2023, Petitioner reported "no change, no improvement," or "maybe a little worse with

4

particular motions such as washing her hair." Ex. 4 at 181. The doctor noted that "she has had continued pain despite formal physical therapy, HEP, 2 different oral anti-inflammatories and subacromial CSI." *Id*. He ordered an MRI. *Id*.

- An MRI of Petitioner's right shoulder performed on January 4, 2023, showed moderate rotator cuff tendinitis with overlying bursitis. Ex. 2 at 17. Petitioner at this time stated that she was "still waking up at night with throbbing pain in her shoulder." *Id*.

- On January 10, 2023, Petitioner returned to her orthopedist to review the results of her MRI. Ex. 4 at 179. She also now received an ultrasound guided steroid injection to her right shoulder. *Id*. During a February 21, 2023 follow-up visit, she reported continuing pain, particularly at night. Ex. 2 at 5. She stated she had not returned to physical therapy due to increasing pain. *Id*. On March 31, 2023, Petitioner returned to her orthopedist with complaints of persistent symptoms. *Id*. at 7. She was scheduled for right shoulder surgery. *Id*. at 8.

- On March 31, 2023, Petitioner underwent right shoulder surgery, which included an arthroscopic rotator cuff tear repair, arthroscopic subacromial decompression, and an open biceps tenodesis. Ex. 2 at 14-15. Petitioner received post-surgical care for her right shoulder from her orthopedist and physical therapist. *See* Ex. 4 at 13; Ex. 3 at 77-107; Ex. 9 at 5-37.

Respondent has noted that Petitioner's vaccination record states that she received the flu vaccine in her left arm, while Petitioner alleges that she received it in her right arm. *See* ECF No. 17. Although the administration record is problematic, Petitioner has provided sufficient evidence that she received the vaccine in her right arm to make that fact finding.

First, Petitioner has recalled details about the vaccination that are consistent with her situs contentions. She states that she was sitting in a chair, with the administrator standing over her to give the vaccine in her dominant right arm. Ex. 11 at ¶1. The following day, Petitioner (now concerned about her symptoms) took a picture of her vaccination site, which depicted her right arm with the band-aid (showing blood on it) from the vaccination. *See* Ex. 8 at 1.

Further, the totality of Petitioner's medical records consistently show that she reported right shoulder pain after vaccination, and that she attributed this pain to a flu shot administered into her right shoulder. The degree to which Petitioner was consistent in reporting her shoulder pain as related to her flu vaccine when seeking treatment is

5

especially convincing evidence supporting her situs argument. *See e.g.,* Ex. 2 at 26 (during her first appointment for treatment, Petitioner reported that she had received a flu vaccine "really high up" on her right shoulder after which she had "immediate pain" that was fairly severe, and difficulty raising her arm.); Ex. 3 at 29 (during her first physical therapy evaluation, Petitioner reported "right shoulder pain and stiffness which began after she received a flu vaccination."); Ex. 3 at 63 (during her second physical therapy evaluation, Petitioner reported right shoulder pain after receiving a flu injection in September.). In addition, Petitioner received treatment only to her right shoulder, including physical examinations, an MRI, two steroid injections, substantial physical therapy, and surgery. There is no indication in the record of any other possible cause of Petitioner's right shoulder pain. And the *only* evidence of vaccination in Petitioner's left arm is the administration record.

Overall, Petitioner's assertions are sufficiently corroborated by the medical records to accept her contention of vaccine situs. Accordingly, I find it more likely than not that the flu vaccination in this case was administered to Petitioner in the right shoulder on September 30, 2022.

### IV.     Scheduling Order

The following is ORDERED: Respondent shall file, by no later than **<u>Wednesday, November 20, 2024</u>, a status report indicating how he intends to proceed in this case in light of the record and this fact ruling.** The status report shall indicate whether he is willing to engage in discussions regarding settlement or damages or is opposed to negotiating at this time.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master